UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANTHONY W. THORNTON | ) | CASE NO. 16-10090(1)(11) |
| ELIZABETH C. THORNTON | ) | |
| | ) | |
| Debtor(s) | ) | |

**MEMORANDUM-OPINION**

This matter is before the Court on the Amended Application to Authorize Debtors to Employ Attorneys *Nunc Pro Tunc* filed by Debtors Anthony and Elizabeth Thornton ("Debtors"). The United States Trustee ("UST") filed an Objection to the Amended Application and the Debtors filed a Reply to the Application. Following a hearing on the matter, the Court took the matter under submission. For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** the Amended Application.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 5, 2016, Debtors filed a Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code. At that time, Debtors were represented by Attorney Mark Flener.

On April 22, 2016, the case was converted to one under Chapter 7 of the United States Bankruptcy Code.

On June 12, 2017, pursuant to an Agreed Order Substituting Counsel for Debtors Seiller Waterman ("SW") commenced representation of the Debtors.

On January 26, 2018, the Court entered an Order converting this case back to one under Chapter 11 of the United States Bankruptcy Code.

On February 1, 2018, SW filed its Application to Employ the firm as counsel for Debtors.

On February 26, 2018, SW filed its Amended Application to Employ SW as counsel for the Debtors.

On March 8, 2018, the UST filed its Objection to the Amended Application to Employ SW as counsel for the Debtors.

On March 15, 2018, Debtors filed their Response to UST's Objection to the Amended Application.

On March 20, 2018, the Court held a hearing on the matter and heard arguments from counsel for the Debtors and the UST.

## **LEGAL ANALYSIS**

This case has a lengthy and complicated history. The case began as a Chapter 11 proceeding and the Debtors were represented by Attorney Mark Flener. The case was later converted to a Chapter 7 proceeding in April 2016. At that point, Alicia Johnson was appointed as the Chapter 7 Trustee.

Several months after the case was converted to a Chapter 7, the Debtors decided they wanted to change legal counsel to SW. Debtors could not afford to pay the retainer required by SW, so Debtors' daughter, Leslie Randolph, agreed to pay SW's fees and paid SW's retainer of $10,000 in June 2017.

Pursuant to 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b), SW disclosed it had received a $10,000 retainer from Debtors' daughter and that it would receive further payments from Ms. Randolph for legal fees.

During the course of representing the Debtors during the Chapter 7 case, SW drew on the retainer on three dates between June 30 and September 7, 2017 which exhausted the retainer. From September 7, 2017 through February 8, 2018, SW received five separate payments for its legal services totaling $18,035.89. These last five payments were made via checks written on the account of Tennessee-Kentucky Trucking, Inc. ("TKT").

TKT is a company owned by Debtors' daughter, Leslie Randolph, the sole shareholder. TKT uses a commercial building owned by the Debtors. The Debtors had an oral lease with their daughter and TKT whereby TKT paid Debtors approximately $2,500 per month for various living expenses, in lieu of rent.

During the 2004 Examination of the Debtors in July of 2017, Mr. Thornton testified that he and his wife received financial assistance from their daughter, Leslie Randolph, that she was the sole shareholder of TKT, and that the assistance consisted of funds she paid them in lieu of rent for use of the building by TKT. A representative of the Chapter 7 Trustee and the major creditor of the Debtors attending the 2004 Examination.

On August 18, 2017, SW amended Debtors' Schedules to disclose an "oral lease with Tennessee-Kentucky Trucking, Inc. in the amount of $2,500 per month."

After the case was converted from Chapter 7 back to one under Chapter 11, Debtors were required to file amended and supplemental Schedules and Statements pursuant to Bankruptcy Rule 1007 and the Order entered by the Court on January 26, 2018.

On February 1, 2018, SW filed its Application to Authorize Debtors to Employ SW as their Attorneys *Nunc Pro Tunc*. In that Application, Attorney David Cantor filed an Affidavit stating that during the course of the Chapter 7 case, SW received $26,978.69 for legal services rendered to the Debtors, but did not disclose TKT as the source of the payments.

On February 16, 2018, Debtors filed updated Schedules and specifically stated that they received financial assistance from family from 2016 forward in "lieu of rent."

On February 26, 2018, SW filed its Amended Application to Employ the firm as counsel for the Debtors. In the Amended Application, SW disclosed the payments made during the Chapter 7 case were from TKT. There was also a payment made to it by TKT on February 8, 2018 for $1,057.20. Counsel stated that he did not disclose TKT as the source of the payments because he believed the relationship between TKT and the Debtors' daughter was known to all parties for over a year. Also, until the UST raised concerns, SW was not aware that the fees it received for its services in the Chapter 7 case were from TKT. Counsel had believed the fees were from Debtors' daughter.

The UST objected to SW's Amended Application contending the payments it received from TKT, was money that was property of the Chapter 7 Estate and should have been under the dominion and control of the Chapter 7 Trustee. The UST contends SW should be sanctioned for failing to disclose the payments from TKT pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b). Although counsel ultimately disclosed TKT as the source of the payments, the UST contends the disclosure was far too late and that the element of "disinterestedness" required of counsel for a debtor prohibits counsel's employment from going forward in this Chapter 11 case.

The Bankruptcy Code requires a professional retained by the debtor in possession not "hold or represent an interest adverse to the estate," and that professionals be "disinterested." 11 U.S.C. § 327(a). The Code defines a "disinterested person" in 11 U.S.C. § 101(14). A party has an "adverse interest" to the estate if they: "(1) possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possess a predisposition under circumstances that render such a bias against the estate." *In re West Delta Oil, Inc.*, 432 F.3d 347, 356 (5th Cir. 2005), quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985). The determination of an adverse interest must be made "with an eye to the specific facts of each case." *West Delta*, 432 F.3d at 356. Bankruptcy courts do not have to deny all compensation if an attorney has an adverse interest and is found not to be disinterested. *In re American Int'l Refinery,* Inc., 676 F.3d 455, 462 (5th Cir. 2012).

In *American Int'l Refinery, Inc.*, the court determined that although there was not a disqualifying adverse interest, the bankruptcy court found that debtor's counsel had failed to make adequate disclosures under Bankruptcy Rule 2014(a) of the source of its retainer and its previous relationship with the debtors. However, none of these disclosure errors were intentional and no harm or prejudice to the estate or creditors resulted. Due to counsel's errors, the court ordered the debtor's attorneys to disgorge 20% of their total fees awarded as a sanction. This result was affirmed by the Fifth Circuit Court of Appeals.

The UST and counsel for Debtors both acknowledge that receipt of the fees from TKT diverted property from the Chapter 7 estate and rendered counsel for the Debtors as not disinterested. Any conflict of interest, however, no longer existed once Ms. Randolph and her sister

reimbursed all fees paid by TKT. The Court determines that under the circumstances of this case, an appropriate sanction for the failure of SW to timely disclose the source of the payments as TKT during the Chapter 7 case, is an order requiring SW to disgorge 20% of the payments received by SW.

The Court's reasons for the sanction are based on the fact that the Debtors did not adequately inform counsel that the funds SW received post-retainer, were from TKT, rather than Debtor's daughter. Counsel explained at the hearing that he did not discover the true source of the funds due to his firm's bookkeeping practices. Counsel explained that when checks are received for payment for legal services at his firm, the firm's accounting department circulates a daily ledger indicating the amount of funds received and the case to which the funds are applied, but it does contain a copy of the checks which would have alerted counsel to the source of the funds. SW has since changed this practice to include the source of the funds.

Next, the Debtors' largest creditor and a representative of the Chapter 7 Trustee were present at the Debtors' 2004 Exam, when the oral lease between the Debtors and TKT was first discussed. Counsel immediately amended the Schedules and revealed the source of the payments in the Amended Application to be Employed once the case was converted to a Chapter 11 proceeding. Additionally, the Debtors' daughter subsequently fully reimbursed TKT for all funds that TKT had paid to SW for legal fees in the Chapter 7 case. Thus, ultimately, TKT did not bear any of the costs of the Debtors' legal representation.

The Chapter 7 Trustee was the representative of the Estate during the Chapter 7 proceeding. As such, the Trustee had a duty to collect and reduce to money the property of the Estate. 11 U.S.C. § 323(a). At no point during the Chapter 7 case, did the Chapter 7 Trustee make demand on TKT

to pay rent for the use of Estate property. The duties of SW and the Debtors to the Estate changed once the case was converted to a Chapter 11 and Debtors became Debtors-in-possession under 11 U.S.C. §§ 1107 and 1008. There is now a written lease requiring TKT to pay monthly rent of $2,500 into the Debtors-in-possession bank account for its use of the building.

The Court believes the 20% sanction referenced above is an appropriate sanction regarding the violation of the disclosure requirements of 2016(b). The facts of this case are not as egregious as those in *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001). The Court believes it would be unduly harsh and would materially prejudice the Debtors to deny SW's Amended Application to Employ SW as their counsel going forward. The Court does not find that the adverse economic interest to the Chapter 7 Estate caused by the payment of fees by TKT in the Chapter 7 case (and a payment of approximately $1,000 after the conversion), under the circumstances of this case, make SW disinterested in the current Chapter 11 case.

Accordingly, the Court will enter an Order granting in part and denying in part the Amended Application of SW as counsel for the Debtors. SW, shall as a sanction, disgorge 20% of all legal fees they received during the Chapter 7 proceeding and the Court will otherwise approve SW's employment on behalf of Debtors going forward as set forth in its Amended Application.

## CONCLUSION

For all of the above reasons, the Court will enter the attached Order Granting in Part and Denying in Part the Amended Application to Authorize Debtors to Employ Attorneys *Nunc Pro Tunc* of Debtors Anthony and Elizabeth Thornton.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: May 18, 2018

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
   ANTHONY W. THORNTON ) CASE NO. 16-10090(1)(11)
   ELIZABETH C. THORNTON )
)
Debtor(s) )

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Amended Application to Authorize Debtors to Employ Attorneys *Nunc Pro Tunc*, be and hereby is, **GRANTED IN PART AND DENIED IN PART** as set forth in the accompanying Memorandum-Opinion.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Seiller and Waterman shall disgorge 20% of the attorney's fees it received during the course of the Debtors Anthony and Elizabeth Thornton's Chapter 7 case and that its employment in the Chapter 11 case is approved in accordance with its Amended Application.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: May 18, 2018